700 So.2d 33 (1997)
Roy Lynn COLE, Appellant,
v.
STATE of Florida, Appellee.
No. 96-2535.
District Court of Appeal of Florida, Fifth District.
August 29, 1997.
Rehearing Denied October 15, 1997.
*35 Flem K. Whited, III, and Barbara C. Davis of Whited & Davis, Daytona Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Carmen F. Corrente, Assistant Attorney General, Daytona Beach, for appellee.
PER CURIAM.
Roy Lynn Cole appeals the lower court's denial of his 3.850 motion alleging ineffective assistance of counsel. After an evidentiary hearing, the court declined to grant Cole a new trial. Although we find that Cole's counsel performed deficiently, we nevertheless affirm because prejudice has not been established.
Cole was convicted of attempted sexual battery with a deadly weapon, aggravated battery, and burglary of a conveyance with battery in connection with an attack on a woman outside the Coquina Lounge in Rockledge. The evidence against Cole included the victim's identification of him, sightings of Cole by the police and Coquina patrons at various locations after the attack, and several independent accounts of Cole's suspicious behavior in the days following the attack. Cole received a departure sentence of life in prison along with two concurrent fifteen-year sentences. His conviction and sentence were affirmed on appeal. Cole v. State, 629 So.2d 327 (Fla. 5th DCA 1994).
In his 3.850 motion, Cole alleged that his trial counsel was ineffective in failing to investigate and present a defense as well as in failing to advise Cole of his right to testify on his own behalf at trial. To prevail on his motion, Cole had to show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The trial court found that Cole had suffered no prejudice due to his counsel's trial performance, without reaching the question of whether Cole's counsel performed deficiently. As to Cole's right to testify, the trial court concluded that Cole knew he had the right to testify and acquiesced in his attorney's advice not to testify. We address Cole's arguments seriatim.

INVESTIGATION AND DEFENSE
Cole alleges that his counsel (1) failed to depose the State's witnesses; (2) failed to call any defense witnesses; (3) failed to obtain the 911 dispatch tape and police log but later objected when the State sought to introduce the log into evidence; (4) failed to present evidence of Cole's alleged physical disability and his resultant inability to commit the crime; and (5) failed to file a pre-trial motion to suppress one of the victim's identifications of Cole. Cole contends that absent these errors, the outcome of the trial would have been different because presentation of this evidence allegedly would have established that Cole was not the man who was seen by police running across a street near the Coquina shortly after the attack and that the timing of the sequence of events made it impossible for Cole to be the perpetrator.
At the evidentiary hearing, Cole's attorney, Daniel Ciener, testified that he never considered deposing the State's witnesses because of "a system or procedure" that he has developed over the years to avoid helping the prosecution and that "there was nothing specific in this case that told [him] to change what has worked for [him] in the past." Ciener did not know what the State's witnesses were going to testify to unless a written statement had been provided during discovery; no written statements had been taken from several witnesses in the instant case. Ciener admitted that although Cole repeatedly tried to contact and speak with him, Ciener did not accept his telephone calls and spoke with Cole only onceon the initial, fee-establishing visit at the jail. Additionally, Ciener had no explanation for not obtaining the 911 tape, and never considered calling Officer Kidd as a witness because in his opinion "there's no way" a police officer's testimony could help a case. Ciener's reason for not calling witnesses was to preserve the final argumentary "sandwich" allowed to a defendant where no witnesses (or only the defendant) are called by the defense. Ciener was unaware of some of the witnesses' sightings of Cole and admittedly was otherwise *36 unaware of what the State's key witnesses were going to testify.
Based on the trial transcript and the testimony adduced at the evidentiary hearing, we cannot help but agree with Cole that his attorney performed deficiently. As this court noted in Williams v. State, 507 So.2d 1122, 1124 (Fla. 5th DCA), rev. denied, 513 So.2d 1063 (Fla.1987), "[a] trial strategy to do nothing ... is not an acceptable one." In addition to not communicating with his client or conducting any investigation, it is clear from the record that Ciener proceeded through the trial without a coherent theory of the case, seeking only to attack the State's witnesses on cross-examination without having any idea what the witnesses' responses would be. Unlike a defense attorney's case-specific tactical decision not to present evidence because of a desire to retain the first and last closing argument in the case, such as was upheld in Van Poyck v. State, 694 So.2d 686 (Fla.1997), Ciener had a blanket policy regarding first and last closing argument without examining the circumstances and potential defenses of each case. This blanket policy is per se deficient.
However, even though Ciener's performance was deficient, Cole has not established the second component of Strickland prejudice. In refining the prejudice prong, the Strickland Court noted:
It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test.... On the other hand, we believe that a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case.... The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
* * * * * *
In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.
466 U.S. at 693-694, 695-696, 104 S.Ct. at 2067-2068, 2068-2069.
Considering the evidence adduced at trial and the testimony at the evidentiary hearing, Cole has not demonstrated that the outcome of the trial "would reasonably likely have been different absent the errors." The timing issue and clothing discrepancy were presented at trial through the State's witnesses. Moreover, Cole has not shown how the police log could have helped to establish the precise sequence of events or how his theory of the sequence of events demonstrates that he could not have been the man seen crossing the street. As to Cole's disability, Cole presented no evidence at the evidentiary hearing that established that he was physically incapable of committing the alleged acts. In short, the jury was made aware of the evidence allegedly in Cole's favor, and nevertheless found that Cole committed the crimes.

RIGHT TO TESTIFY
Cole's second argument involves Ciener's alleged interference with Cole's constitutional right to testify on his own behalf. Ciener admitted at the evidentiary hearing that he never told Cole outright that he had the right to testify regardless of Ciener's opinion, and that he would have discouraged *37 Cole's testimony if Cole had brought it up.[1] Cole contends that during the trial he told Ciener's associate, Blaise Trettis, that he wanted to testify, and before closing arguments he stood up and said "Can I say something?" only to be silenced by Ciener.
The trial court found that Cole had acquiesced in Ciener's instructions not to testify based on the memorandum in support of the 3.850 motion, signed by Cole, which stated:
Prior to trial, counsel stated that he would probably not call Roy Cole to the stand. Dan Ciener indicated that because of Roy's previous conviction he would be impeached. Roy Cole, prior to trial, acquiesced to these instructions.
Additionally, the trial court had before it Cole's testimony at the evidentiary hearing, upon which it had the opportunity to assess Cole's credibility, and concluded that Cole's insistence on testifying was merely a post-verdict "afterthought." In the face of Cole's memorandum admitting acquiescence, we find the trial court's ruling that Cole knew of his right to testify but did not insist on testifying is supported by the evidence.

THE FEE AGREEMENT
Finally, the fee agreement between Ciener and Cole warrants separate discussion. Cole paid Ciener $9500 to represent him and signed a contract stating that the fee included all discovery and investigative fees. We note the inherent conflict presented by such an arrangementwhatever investigative costs are incurred come directly out of the attorney's pocket. In light of Ciener's "policy" of not conducting any discovery, this fee agreement is at least misleading, if not deceptive. In Strickland, the Court noted that prejudice is presumed where an actual conflict of interest is shown, but only where that conflict adversely affects the lawyer's performance. 466 U.S. at 692, 104 S.Ct. at 2067. It does not appear that Ciener's defective performance was due to the fee agreement, but instead to his "policy" and "system" for trying cases.[2] Nevertheless, when such an arrangement is made and a client requests discovery, an attorney should, at a minimum, provide a reasonable explanation for why the desired discovery is not being conducted.
AFFIRMED.
GOSHORN, PETERSON and ANTOON, JJ., concur.
NOTES
[1] Rule 4-1.2 of the Rules of Professional Conduct provides:

(a) Lawyer to Abide by Client's Decisions. A lawyer shall abide by a client's decisions concerning the objectives of representation ... and shall consult with the client as to the means by which they are to be pursued. A lawyer shall abide by a client's decision whether to make or accept an offer of settlement of a matter. In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial, and whether the client will testify.
[2] We note Rule 4-1.7 of the Rules of Professional Conduct, which provides in part:

(b) Duty to Avoid Limitation on Independent Professional Judgment. A lawyer shall not represent a client if the lawyer's exercise of independent professional judgment in the representation of that client may be materially limited by the lawyer's ... own interest, unless:
(1) the lawyer reasonably believes the representation will not be adversely affected; and
(2) the client consents after consultation.
The comment to the rule states in part that "[t]he lawyer's own interests should not be permitted to have adverse effect on representation of a client."