709 So.2d 112 (1998)
Ruel LANIER, Appellant,
v.
The STATE of Florida, Appellee.
No. 96-2631.
District Court of Appeal of Florida, Third District.
March 4, 1998.
Rehearing Denied May 6, 1998.
*113 Bennett H. Brummer, Public Defender and Ray Taseff and Beth C. Weitzner, Assistant Public Defenders, for appellant.
Robert A. Butterworth, Attorney General and Sandra S. Jaggard, Assistant Attorney General, for appellee.
Before SCHWARTZ, C.J., and NESBITT, JORGENSON, COPE, LEVY, GERSTEN, GODERICH, GREEN, FLETCHER, SHEVIN and SORONDO, JJ.
PER CURIAM.
As we did in Jones v. State, 466 So.2d 301 (Fla. 3d DCA 1985)(en banc), approved, 485 So.2d 1283 (Fla.1986), we sua sponte consider this case en banc because the proposed majority panel opinion directly conflicted with several of our prior decisions concerning both (a) the role of the trial court in assessing the evidence before it in post-conviction proceedings, e.g., McDonald v. State, 249 So.2d 77 (Fla. 3d DCA 1971); Cash v. State, 207 So.2d 18 (Fla. 3d DCA), appeal dismissed, cert. dismissed, 211 So.2d 209 (Fla. 1968); see generally Horatio Enters, v. Rabin, 614 So.2d 555 (Fla. 3d DCA 1993), and (b) the principles, as established in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which govern claims of ineffective assistance of trial counsel. E.g., Adams v. State, 669 So.2d 284 (Fla. 3d DCA 1996); State v. Oisorio, 657 So.2d 4 (Fla. 3d DCA 1995), approved, 676 So.2d 1363 (Fla.1996); Martinez v. State, 655 So.2d 166 (Fla. 3d DCA 1995); Barclay v. Singletary, 642 So.2d 583 (Fla. 3d DCA 1994), review denied, 651 So.2d 1192 (Fla. 1995); Eason v. State, 632 So.2d 191 (Fla. 3d DCA 1994); State v. Stirrup, 469 So.2d 845 (Fla. 3d DCA 1985), review denied, 480 So.2d 1296 (Fla.1985).
On the merits, we conclude that the appellant has not demonstrated that the trial judge erred in finding, after an evidentiary hearing, that the second, or "prejudice," prong of Strickland had not been satisfied  that is, that, but for "counsel's [alleged] unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 669, 104 S.Ct. at 2055-56, 80 L.Ed.2d at 682; see Cole v. State, 700 So.2d 33, 36 (Fla. 5th DCA 1997), and cases cited.
Like the trial judge, we do not reach the issue of whether Lanier satisfied the first, or "performance," prong of Strickland.
Affirmed.
SCHWARTZ, C.J., and NESBITT, JORGENSON, LEVY, GODERICH and SORONDO, JJ., concur.
LEVY, Judge, concurring.
I am in complete agreement with the majority opinion and believe that the facts and law involved in this case strongly require an affirmance of the trial court's holding in this matter. Accordingly, I am writing this concurrence, which was originally written as a dissent to the proposed majority opinion of the three-judge panel, to express the reasons underlying my position.
On June 19, 1991 at approximately 10:00 p.m., Kimberly Van Buskirk ("the victim") was driving home with her children. She pulled into her driveway, exited her station wagon, and opened the hatchback. The victim heard her son scream and turned to see a man run toward her. The man grabbed her purse. There was a struggle over the purse and the victim was pushed into the hatchback. During the struggle, the victim was able to observe the assailant's face. The assailant took the victim's purse and the victim saw the perpetrator run to the street and get into the passenger side of a light-colored car. The car sped away in the direction of Bob-O-Link Drive which connects to Miami Gardens Drive.
The victim immediately called police. She provided the police dispatcher with a description of the assailant. She described the perpetrator as being an African American male, at least six feet tall, and weighing in excess of 230 pounds. She reported that the assailant's car was a light-colored Chevrolet Caprice, or Impala. The victim also informed the police of the car's direction of travel. The dispatcher radioed the information to area police.
Soon thereafter the police observed a light-colored 1978 Chevrolet Caprice automobile *114 on N.W. 67th Avenue, in the area of American High School. The car made a U-turn and turned into the parking lot of American High School. After driving through the lot, the car pulled back out onto the roadway. The police stopped the car on the corner of Miami Gardens Drive and N.W. 67th Avenue. Jose Rodriguez, ("Rodriguez"), was the driver of the Caprice and Ruel Lanier, ("the Defendant"), sat in the passenger seat. The police detained Rodriguez and the Defendant.
The police drove the victim past the light-colored Caprice where the Defendant was detained. The victim identified the Defendant as the perpetrator and identified the Chevrolet Caprice as the car used in the crime. Many of the items taken from the victim were recovered at several locations between the victim's home and the detained car. For example, her wallet was recovered on Bob-O-Link Drive, and a credit card and lipstick case were found at the American High School lot. Rodriguez and the Defendant were arrested.
On July 10, 1991, the Defendant was charged with strong-arm robbery, and in June, 1991, a public defender was appointed to represent the Defendant. The public defender took discovery depositions and conducted an investigation. On October 15, 1991, the public defender filed a witness list. The list named two friends of the Defendant, Edward Sean Jackson ("Jackson"), and the driver of the car, Rodriguez. The State deposed Rodriguez and Jackson on November 7,1991.
On January 6, 1992, Sy Gaer appeared as private counsel on behalf of the Defendant. The public defender turned the entire defense file over to Sy Gaer's associate, Diane Cuervo. Furthermore, the public defender spoke with Sy Gaer and informed him that "there were defense witnesses." In addition, the Defendant personally explained to Sy Gaer that Rodriguez and Jackson were available and that they should be called as alibi witnesses. Specifically, the Defendant states in his motion for postconviction relief:
Mr. Lanier thereafter informed Mr. Gaer that Jose Rodriguez and Edward Jackson should be called as alibi witnesses for the defense in this case. Mr. Lanier explained to Gaer that Rodriguez's testimony would establish that Mr. Lanier was in Rodriguez's company on the night of June 19, 1991, the date of the offense, that Mr. Lanier was not present at the site of the robbery and did not commit it, and that Mr. Lanier's presence in a car that was within two miles of the scene of the robbery on the night of the offense was for an entirely innocent purpose. Mr. Lanier further explained that Jackson's testimony would corroborate Rodriguez's testimony.
The case was called to trial on June 25, 1992, and a jury trial was held. Sy Gaer did not present either Rodriguez or Jackson on behalf of the defense. The theory of the defense was that the Defendant had been misidentified, as evidenced by inaccuracies in the descriptions of the Defendant provided by the victim. Defense counsel established that the victim initially reported that the perpetrator was over six feet tall and weighed over 230 pounds, but that the Defendant is only five feet nine inches tall and weighed 185 pounds at the time of the offense. After jury deliberation, the Defendant was found guilty of robbery and sentenced to a lengthy prison term due to his status as an habitual violent felony offender. The Defendant's conviction and sentence were affirmed by this court on direct appeal.
The Defendant submitted a motion for postconviction relief asserting that Sy Gaer and Diane Cuervo provided ineffective assistance of counsel because they failed to present the available alibi witnesses. More specifically, the "Supplement to Postconviction Motion" claimed that the alleged ineffectiveness of the Defendant's trial counsel was based upon the fact that the said trial counsel did not read the depositions of Rodriguez and Jackson which were contained within the public defender's file. In essence, the Defendant's theory, as contained in his motion, and as argued at the evidentiary hearing held by the trial court, relies on a domino-like type of reasoning: (1) Attorney Gaer did not read the depositions of Rodriguez and Jackson that were contained in the public defender's file; (2) accordingly, Gaer did not know of the nature of the testimony that Rodriguez *115 and Jackson would be able to offer if called as defense witnesses; (3) consequently, Gaer did not call Rodriguez and Jackson as alibi witnesses on behalf of the Defendant at trial, thereby depriving the Defendant of having the jury hear the testimony of Rodriguez and Jackson and, presumably, according to the Defendant's theory, having a "reasonable doubt," created in the minds of the jurors. The motion was accompanied by an affidavit signed by Sy Gaer. Sy Gaer's affidavit stated that neither he nor his associate Diana Cuervo read the depositions of Rodriguez or Jackson. The trial court held an evidentiary hearing on the motion for postconviction relief. At the hearing, the public defender, Sy Gaer, and Diana Cuervo testified. Gaer and Cuervo reiterated the statements in Gaer's affidavit. Gaer stated that he relied entirely on a misidentification defense.
The depositions of Rodriguez and Jackson, which had been taken by the State on November 7, 1991, were introduced at the hearing. The transcript of the depositions reveal that Rodriguez testified that the Defendant was a passenger in his car at the time of the robbery. According to Rodriguez, he and the Defendant were on their way to pick up Jackson at American High School. Jackson testified at his deposition that he was attending class at the high school on the night of June 19, 1991. Jackson further testified that he "beeped" Rodriguez so that Rodriguez would come pick him up at the high school. The trial court also heard testimony from Rodriguez and Jackson at the hearing. Rodriguez and Jackson testified in accordance with their depositions.
At the outset, before reviewing the trial court's order or examining the record in this case, one is immediately struck by the glaring hollowness of the Defendant's position. As noted above, the Defendant, in his own motion for postconviction relief, states that he informed Gaer of the existence of Rodriguez and Jackson as alibi witnesses and, furthermore, the Defendant goes on in his motion to state that he explained, in detail, the nature and relevancy of the testimony that the Defendant felt could be offered by Rodriguez and Jackson. Accordingly, even if Gaer had read the depositions, he would not have gained any knowledge in addition to that which was imparted to him by the Defendant personally. Although the dissenting opinion contains language stating "In fact, Mr. Gaer testifies that he didn't recall being told about the witnesses", I must point out, with all respect, that the record of that hearing does not support that broad statement. Rather, the transcript of the hearing makes it very clear that Mr. Gaer was very specific in testifying that he did not recall the public defender telling him about defense witnesses. Nowhere in his testimony does Gaer state or suggest any type of denial or expression of doubt concerning the fact that the Defendant, personally, told him the specifics concerning the identity of the alibi witnesses and the nature of their potential testimony. Accordingly, in light of the facts of this specific case, there could be no harm, ineffectiveness, or prejudice stemming from the fact that Gaer and his associate did not read the depositions of Rodriguez and Jackson.
After hearing argument from counsel and reviewing submitted memoranda of law, the trial court denied the Defendant's motion for postconviction relief. The trial court found, according to its written order, that the Defendant was not prejudiced because there did not exist a reasonable probability that the outcome of the trial would have been different had Rodriguez and Jackson been presented as witnesses. The trial court reasoned that the outcome would not have been different because (1) any testimony given by Rodriguez would have been unreliable due to the fact that he was driving the car identified as the one used in the robbery and his exculpatory statements about the Defendant also serve to exonerate him from criminal activity, (2) Jackson's testimony would not establish the whereabouts of the Defendant because he never saw the Defendant on the night of the robbery, and, (3) both Rodriguez and Jackson have prior felony convictions which undermine their credibility and effectiveness as witnesses. In fact, Mr. Gaer was probably in a better position than anyone else to evaluate the potential effect, and value, of Rodriguez's testimony in view of the fact that Jose Rodriguez, coincidentally, was also a client of Mr. Gaer's. Specifically, at the evidentiary hearing held in connection with the Defendant's *116 motion for postconviction relief, Mr. Gaer testified, regarding Rodriguez, that "I represented him on I don't know how many different occasions ... Jose Rodriguez, I'm very familiar with." Clearly, Mr. Gaer was in the best position to evaluate the possibility of calling Rodriguez as a witness and, wisely, to make the tactical strategy decision not to call such an obviously impeachable witness. As Gaer obviously realized, Rodriguez possessed very doubtful credibility and obviously possessed great motivation to lie concerning the Defendant's whereabouts, which lie would also serve as an attempt to exculpate Rodriguez from being identified as being the "wheel-man" during the commission of the crime. I agree with the reasoning of the trial court and would affirm the trial court's denial of postconviction relief.
The recognized test to determine whether there has been ineffective assistance of counsel has been set forth by the Supreme Court of the United States. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "Under the two-prong Strickland test, [the Defendant] must demonstrate that (1) counsel's performance was deficient and (2) there is a reasonable probability that the outcome of the proceeding would have been different." Torres-Arboleda v. Dugger, 636 So.2d 1321, 1324 (Fla.1994)(citing to Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). The actions of trial counsel in the instant case do not satisfy either prong of the Strickland test. Defense counsel was informed of the existence of the witnesses, and the nature of their testimony in their depositions, by the Defendant himself. It is well settled that defense counsel's informed decision to refrain from presenting certain witnesses does not constitute ineffective assistance of counsel. See Breedlove v. State, 692 So.2d 874 (Fla.1997); Rose v. State, 675 So.2d 567 (Fla.1996); Porter v. State, 478 So.2d 33 (Fla.1985); Magill v. State, 457 So.2d 1367 (Fla.1984); Wilkins v. State, 685 So.2d 957 (Fla. 4th DCA 1996); Johnson v. State, 541 So.2d 661 (Fla. 1st DCA 1989).
Even if we were to assume, arguendo, that the dissenting opinion is accurate in its position that the performance of trial counsel in this matter was deficient, that determination only satisfies half of the test to be applied by courts in examining a claim of ineffective assistance of counsel. The Strickland court defined the requirement for the prejudice portion of the test as follows:
The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
* * * * * *
Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.
466 U.S. at 694-96, 104 S.Ct. at 2068-69. The Defendant bears the full responsibility of affirmatively proving prejudice because "[t]he government is not responsible for, and hence not able to prevent, attorney errors that will result in reversal of a conviction or sentence." 466 U.S. at 693, 104 S.Ct. at 2067.
As the trial court found, and reflected in its order, the Defendant in the instant case failed to prove the prejudice component of the Strickland analysis. The Defendant argued that the outcome of his case would have been different because the testimony of Rodriguez and Jackson allegedly would have established that the Defendant was riding in the car with Rodriguez on the way to pick up Jackson at the time of the robbery. However, Jackson never saw the Defendant on the night of the crime and his testimony would have failed to establish the location of the Defendant. In addition, Jackson has prior felony convictions which bring the credibility and impact of his testimony into question, and the presence of these prior convictions raises the possibility that his testimony could *117 have actually damaged the defense presentation.
With regard to Rodriguez, the reliability of his testimony would also have been highly questionable (as well as detrimental to the defense) because his testimony places the Defendant in the passenger seat of an older, light-colored, Chevrolet Caprice within two miles of the crime scene minutes after the crime, as well as at American High School, where property of the victim was found. In addition, Rodriguez was detained along with the Defendant as the driver of the get-away car. The State pointed out that Rodriguez did not enjoy any immunity for his testimony in this case. Any exculpatory statements about the whereabouts of the Defendant would automatically work to benefit and exonerate Rodriguez from his own criminal activity.
Turning from the testimony of Rodriguez and Jackson, I now examine the remaining evidence presented at trial. The main theory of the defense was that of misidentification and it was fully explored at trial. The defense pointed out the discrepancies in the victim's descriptions of the Defendant. The jury rejected the Defense theory and found the Defendant guilty.
In contrast, "overwhelming" evidence was presented which implicated the Defendant. That evidence included the eyewitness identification of the victim, the fact that the Defendant was found in the passenger seat of a car which had been observed by police at a location consistent with the direction of travel of the assailant's get-away vehicle, and the Caprice was identified by the victim as the car used in the robbery. If that were not enough, the roadway between the victim's home and the location where the Defendant was apprehended was littered with the victim's property in a fashion reminiscent of the famous bread crumbs and pebbles left along the path of Hansel and Gretel.[1] Finally, the Defendant was apprehended less than two miles away from the scene of the crime, within minutes of the crime. "Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings ...," I would hold that the Defendant did not meet the burden of showing that the result reached would reasonably have been different. Strickland, 466 U.S. at 695, 104 S.Ct. at 2068. Consequently, I would affirm the inquiry performed and the ruling reached by the trial court because, in addition to all of the foregoing, "[i]f it is easier to dispose of an ineffective claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id. at 697, 104 S.Ct. at 2069.
I agree with the majority opinion and would affirm the trial court's denial of the Defendant's motion for postconviction relief.
SCHWARTZ, C.J., and NESBITT, JORGENSON and GODERICH, JJ., concur.
SHEVIN, Judge, dissenting.
Contrary to the majority's representation, this case does not merit en banc consideration. Without explanation or reasoning, the majority perfunctorily concludes that Lanier has not demonstrated any error in the trial court's conclusion that he was not prejudiced by counsel's performance. "The object, quite clearly, is not to persuade, but to prevail." Webster v. Reproductive Health Serv., 492 U.S. 490, 546, 109 S.Ct. 3040, 3072, 106 L.Ed.2d 410 (1989)(Blackmun, J., concurring in part, dissenting in part). However, this is a classic black letter law case of ineffective assistance of counsel as defined in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The trial court's order should be reversed.
The original panel opinion did not conflict with any previous opinions of this court: the record evidence does not support the trial judge's conclusion, compare Cash v. State, 207 So.2d 18 (Fla. 3d DCA 1968), and the evidence was sufficiently compelling to permit a conclusion "as a matter of law that the trial judge erred in failing to grant a new trial." McDonald v. State, 249 So.2d 77, 78 (Fla. 3d DCA 1971).
*118 Moreover, the evidence was sufficient to satisfy the second prong, or "prejudice" prong, of Strickland, also refuting any claim of conflict with prior opinions. Compare State v. Oisorio, 657 So.2d 4 (Fla. 3d DCA 1995)(order granting post-conviction relief reversed because no prejudice shown); Martinez v. State, 655 So.2d 166, 168 (Fla. 3d DCA 1995)(relief denied based on counsel's claimed deficiencies during jury selection because defendant did not "at minimum, demonstrate some prejudice," but remanded for hearing because record doesn't refute claim that counsel was ineffective for failing to include defendant at sidebar during peremptory challenges); Barclay v. Singletary, 642 So.2d 583 (Fla. 3d DCA 1994)(habeas petition denied because defendant did not demonstrate that counsel's acts were so erroneous that they prejudiced his appeal such that result would have been different). In State v. Stirrup, 469 So.2d 845, 848 (Fla. 3d DCA 1985), the court denied relief because, "We can conceive of no defense, and none is suggested by defendant, which in any likelihood might have produced a different result." In contrast, Lanier clearly sets out the alternative defense and how it would have produced a different result.
Lanier's ineffective assistance of counsel claim was legally sufficient because the motion fully alleged the factual basis for seeking relief, Eason v. State, 632 So.2d 191 (Fla. 3d DCA 1994), and Lanier specified in his motion, as substantiated at the evidentiary hearing, that "if defense counsel had taken the additional steps identified in appellant's motion, there [was a] reasonable probability that the trial outcome would have been different." Adams v. State, 669 So.2d 284, 284-85 (Fla. 3d DCA 1996).

I. FACTS
Ruel Lanier was convicted of strong-arm robbery, as charged, and sentenced to thirty years in prison. Thereafter, Lanier filed a Florida Rule of Criminal Procedure 3.850 motion asserting ineffective assistance of trial counsel. Lanier asserted that trial counsel, Sy Gaer, and his associate, Diana Cuervo, were ineffective for failure to investigate and present Lanier's alibi defense through two witnesses listed by Lanier's original public defender, Steve Levine. Both witnesses were available to testify as to Lanier's whereabouts during the time the charged offense was committed. No witnesses were presented on Lanier's behalf at trial.
At trial, misidentification was Lanier's sole defense. At the scene, the robbery victim, a physical trainer, described her assailant as a six-foot tall man, weighing between 230 and 240 pounds, wearing a long-sleeved shirt and an Afro hairstyle. It was undisputed that at the time of the robbery, Lanier was five feet nine inches tall, weighed 185 pounds, wore a short-sleeved t-shirt and did not have an Afro hairstyle. The victim's trial testimony and deposition testimony were contradictory regarding both the assailant's description and the get-away car's description. Although the victim may have been in a state of hysteria during her very quick confrontation with the assailant, she was a physical trainer  by definition a person trained to observe body types and physical appearance  and yet she described an assailant who was very different than this defendant.
The victim's purse was found empty along the perpetrator's get-away route. The victim's credit cards, identification and lipstick were also recovered along the route and on the grass by the American High School parking lot. The victim's watch and bracelet were never recovered. These items were not found on the defendant, on the car's driver, or in the car.
At the hearing on Lanier's motion for post-conviction relief, the following testimony was introduced: In June 1991, Steve Levine, an Assistant Public Defender, was appointed to represent Lanier. Levine testified that upon completing his investigations and discovery, he listed Jose Rodriguez and Edward Sean Jackson as defense witnesses, intending to call them at trial for purposes of establishing the alibi defense; both witnesses had been deposed. Levine served standby trial subpoenas on both witnesses to ensure their attendance at trial.
In January 1992, Sy Gaer replaced Levine as Lanier's counsel. Levine testified that he informed Gaer that there were defense witnesses and that they should talk about the *119 case. Levine gave his case file, including all depositions and discovery materials, to Diana Cuervo, Gaer's associate. Neither attorney contacted Levine.
Gaer testified that he had no recollection of Levine's comments. During trial preparation, Gaer never read the Rodriguez or Jackson depositions. Gaer testified that he was unaware of the content of the depositions during Lanier's trial. Cuervo never read the depositions either. In fact, after jury selection on the case, Gaer requested a continuance until the following day because he had not anticipated trial would start that day and had not yet read the public defender's file. The court granted a three-day continuance. However, neither counsel ever read the depositions or spoke to either witness before or during the three-day continuance.
During the post-conviction evidentiary hearing, both alibi witnesses testified consistently with their pretrial depositions. Jose Rodriguez testified that he had agreed to give his friend Jackson a ride home from American High School. Jackson was to beep Rodriguez when he was ready to be picked up. Rodriguez was giving another friend a ride home that evening when he spotted Lanier walking along the street. Rodriguez gave Lanier a ride and the two dropped the friend off at about 9:15 P.M. At that time, Rodriguez received Jackson's beep. Rodriguez and Lanier proceeded to the school. Upon arriving there they did not see Jackson, and after driving through the parking lot they drove away. At that time Rodriguez received a second beep from Jackson; he drove back to the school. After driving through the parking lot again, and not finding Jackson, the two departed. Thereafter, the police stopped the car.
Edward Jackson testified that he had arranged to get a ride from Rodriguez after night school, at about 10:00 P.M. He left class early, at about 9:00 or 9:30 P.M., and beeped Rodriguez. He waited for the ride by the back of the school, near the drivers' education building but never saw Rodriguez. Twenty-five minutes later Jackson beeped Rodriguez again. Rodriguez never showed up. The high school registrar testified that the school records confirmed Jackson's attendance on the night of the incident.
The state presented no evidence to rebut the witnesses' statements, and the statements were corroborated by the testimony of the trial witnesses: Officer Frances Greene observed the car Lanier was riding in drive slowly through the school parking lot. The officer noticed one of the passengers was looking out the window. The officer did not see anyone in the car discard any property. Officer Eugenio Figueroa testified that shortly before 10:00 P.M. he saw Rodriguez's car drive slowly through the school parking lot and that no property was discarded from the vehicle.
In denying the post-conviction relief motion, the court declined to consider whether counsel's performance was deficient. The court found that Lanier had not demonstrated prejudice because the presentation of the alibi witnesses would not have altered the course of the trial. Lanier appealed this order.

II. STRICKLAND "DEFICIENT PERFORMANCE" PRONG
To demonstrate ineffective assistance of counsel, the movant must demonstrate that "1) counsel's performance was deficient and 2) there is a reasonable probability that the outcome of the proceeding would have been different." Torres-Arboleda v. Dugger, 636 So.2d 1321, 1324 (Fla.1994)(emphasis added)(citing Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)). Deficient performance means that "counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Rose v. State, 675 So.2d 567, 569 (Fla.1996)(citing Strickland). Accord Cherry v. State, 659 So.2d 1069 (Fla.1995). The record in this case clearly demonstrates a deficient performance.
Counsel Gaer and Cuervo were not able to testify that they declined to introduce the alibi witnesses as a result of tactical or strategic considerations. Neither attorney had read the depositions or the public defender's discovery on the day trial was set to commence, and despite the three-day continuance, *120 neither attorney read the depositions or spoke with the prospective witnesses. Cf. State v. Jacobs, 689 So.2d 338, 338 (Fla. 5th DCA 1997)(not calling alibi witness not ineffective assistance of counsel where lawyer decided not to call witnesses "after consideration of the conflicts in the stories of the witnesses and after the lawyer assessed the possible negative impact on the jury.").
While a defense attorney's informed decision not to present witnesses will not rise to the level of ineffective assistance of trial counsel, the record amply demonstrates that in this case Mr. Gaer did not make an informed decision. In fact, at the evidentiary hearing, Gaer testified that he didn't read the witnesses' depositions, didn't interview the witnesses and did not review any notes in the public defender's file. If Gaer was going to make an "informed decision" about presenting or not presenting witnesses, he should have availed himself of some information from which to formulate the decision. This representation cannot fairly be characterized as effective.
Even after "(a) mak[ing] every effort to eliminate the distorting effects of hindsight by evaluating the performance from counsel's perspective at the time, and (b) indulg[ing] a strong presumption that counsel has rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment[,]" Blanco v. Wainwright, 507 So.2d 1377, 1381 (Fla. 1987), the evidence compels the conclusion that counsel's performance was deficient. While an attorney's tactical and strategic decisions are entitled to deference, those decisions must originate from a basis of information, not ignorance. Cf. Bryan v. Dugger, 641 So.2d 61, 64 (Fla.1994)(ineffective assistance claim denied because "[t]his is not a case which defense counsel failed to prepare."). The record does not demonstrate that counsel made decisions based on reasonable professional judgment. The record only demonstrates that counsel failed to adequately prepare by reading his client's file and by failing to interview witnesses.
The trial court found that counsel's decision not to call the alibi witnesses was reasonable. While we might agree with this conclusion had counsel made an informed decision not to call the witnesses, the failure to call the witnesses in these circumstances is not reasonable. The trial court further justifies that the decision not to call the witnesses was probably based on the witnesses' past criminal history. Once again, these justifications presume counsel made a conscious choice based on information and investigation sufficient to amount to a tactical or strategic decision. The record does not support such justification. Nowhere in Mr. Gaer's testimony, which only spans eight pages and one line of the transcript, does Mr. Gaer state that he had any knowledge or awareness of those witnesses or what their testimony would be. In fact, Mr. Gaer testifies that he didn't recall being told about the witnesses. Although defense counsel is entitled to make a strategic or tactical decision about deposing or calling witnesses, failure to read a client's file and failure to call a witness because of lack of knowledge is not such a decision.
Moreover, "[o]nce a defendant identifies potential alibi witnesses, it is unreasonable not to make some effort to contact them to ascertain whether their testimony would aid the defense." Grooms v. Solem, 923 F.2d 88, 90 (8th Cir.1991)(emphasis added). "Neglect even to interview available eyewitnesses to a crime simply cannot be ascribed to trial strategy and tactics." Hoots v. Allsbrook, 785 F.2d 1214, 1220 (4th Cir.1986)(emphasis supplied).
I am unwilling to endorse a precedent condoning the failure of defense counsel to read a client's file and the failure to read depositions of critical witnesses as a tactical or strategic decision. It is a serious omission and "counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Rose, 675 So.2d at 569 (citing Strickland).

III. STRICKLAND "PREJUDICE" PRONG
To satisfy the second prong of the Strickland test the defendant must establish that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Rose, 675 So.2d at 569(citing Strickland). The Rose court, acknowledging *121 the importance of finality in criminal proceedings, explained the standard of prejudice to be applied on the second Strickland prong.
An ineffective assistance claim asserts the absence of one of the crucial assurances that the result of the proceeding is reliable, so finality concerns are somewhat weaker and the appropriate standard of prejudice should be somewhat lower. The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome.... The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
Rose, 675 So.2d at 569-70 n. 4 (citing Strickland)(emphasis added). Failure to thoroughly investigate an alibi defense can be considered prejudicial when the surrounding circumstances of the case are examined. See Torres-Arboleda. In this case, Lanier has established a reasonable probability that but for counsels' deficient performance the result of the proceeding would have been different. Lanier has demonstrated a probability sufficient to undermine confidence in the outcome of his trial.
Here, the failure to present the alibi defense left the jury to consider only the misidentification defense. At trial, there was conflicting testimony regarding the discrepancies between Lanier's physical characteristics and the victim's description of the assailant. The victim described herself as being in a hysterical state as the events were transpiring. There was also conflicting evidence identifying the assailant's vehicle. The state did not introduce overwhelming evidence against Lanier. The alibi witnesses' testimony at the evidentiary hearing and at deposition was unrebutted and was corroborated by the testimony of other witnesses at trial.
I cannot agree with the trial court's conclusion that the outcome of the proceedings would not have been different had the jury been permitted to consider the alibi testimony in conjunction with the identification discrepancies. This case presents a unique and compelling circumstance where counsels' numerous deficiencies create a reasonable probability that but for those errors, the result of the proceedings would have been different. This showing satisfies the Strickland prejudice standard. "A `reasonable probability' is a probability sufficient to undermine confidence in the outcome." Bryan, 641 So.2d at 63. In Lanier's case, the cumulative effect of the testimony presented at the hearing, coupled with the weak identification testimony, undermines my confidence in the outcome of Lanier's trial and creates a reasonable probability of a different outcome. State v. Gunsby, 670 So.2d 920 (Fla.1996)(citing Cherry v. State; Harvey v. Dugger, 656 So.2d 1253 (Fla.1995)).

IV. CONCLUSION
Contrary to the trial court's determination, as endorsed by the majority today, Lanier was prejudiced by his counsel's deficient performance. There is a reasonable probability that but for counsel's deficiency there would have been a different result at trial. The trial court's rationalizations attempting to justify counsel's conduct are all well and good, but are not supported by the evidence. Had Lanier's counsel testified that he so much as knew of the alibi witnesses, considered them, glanced at the depositions, or otherwise gave the matter a modicum of thought, no doubt Lanier's appeal would have been disposed of with no more than a per curiam affirmance. However, that is not what occurred.
Because the motion and the testimony at the hearing established that trial counsel's performance was deficient, and that there was a reasonable probability that the outcome of the proceedings would have been different if the alibi witnesses had been presented, I would reverse the order denying Lanier's Rule 3.850 motion, vacate Lanier's conviction and sentence and remand the cause for a new trial.
I cannot envision a more compelling scenario justifying ineffective assistance of counsel relief. The majority's decision today, under *122 the blanket of conflict, turns a blind eye to a serious deficiency of the type Strickland was designed to redress. Whatever policy reasons may be enlisted to champion this outcome, the reality remains the same: the correct result in this case is reversal.
COPE, GERSTEN, GREEN and FLETCHER, JJ., concur.
NOTES
[1] THE BROTHERS GRIMM, HANSEL AND GRETEL, reprinted in THE BROTHERS GRIMM, GRIMM'S COMPLETE FAIRY TALES 101 (Barnes & Noble, Inc. 1993)(1812).